UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SCOTT ZIRUS, § | |
|     Plaintiff, § | |
| V. § | Cause No. 1:24CV00224 DII |
| § | |
| PATRICK L. O'DANIEL; § | |
| SYDNEY ZUIKER; NATE SPINKLE; § | |
| BILL WELCH; MOLLY FRANCIS; § | |
| FAITH JOHNSON; SICHAN SIV; § | |
| ERIC NICHOLS; RODNEY BURROW; § | |
| and DIRECTOR'S REVIEW COMMITTEE, § | |
| in his or her official capacities, § | |
|     Defendants. § | |

## COMPLAINT

### I.
### JURISDICTION AND VENUE

1. This is a civil action authorized by 42 U.S.C. 1983 to redress the deprivation, under color of State law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. 1331 and 1343(a)(3). Plaintiff Zirus seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiff Zirus' claims for injunctive relief are authorized by 28 U.S.C. 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Western District of Texas, Austin Division, is an appropriate venue under 28 U.S.C. 1391(b)(2) because it is where the events giving rise to these claims occurred. Plaintiff Zirus does NOT raise any claims arising from events on his assigned unit in Abilene. Instead the claims solely purtain to TDCJ Board Policy (BP-03.91) created by the Texas Board of Criminal Justice which conducts business in Austin, Texas because the TBCJ is statutroily required to maintain headquarters in Austin. See, Tex. Gov. Code §492.014(a). This places the events giving rise to the claims (the creating or amendment of TDCJ policy) squarely in the Western District of Texas.

-1-

## II.
## PLAINTIFF

3. Plaintiff Scott Zirus is and was at all times mentioned herein a prisoner of the State of Texas in the custody of the Texas Department of Criminal Justice. He is currently confined at the French M. Robertson Unit. Plaintiff Zirus is an Australian National wrongfully convicted by the State of Texas.

## III.
## DEFENDANTS

4. Defendant Patrick L. O'Daniel is the Chairman of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

5. Defendant Sydney Zuiker is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his/her official capacity are statutorily located in Austin, Texas.

6. Defendant Nate Spinkle is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

7. Defendant Bill Welch is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

8. Defendant Molly Francis is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in her official capacity are statutorily located in Austin, Texas.

9. Defendant Faith Johnson is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in her official capacity are statutorily located in Austin, Texas.

10. Defendant Sichan Siv is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

11. Defendant Eric Nichols is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

12. Defendant Rodney Burrow is a member of the Texas Board of Criminal Justice and is legally responsible for the creation and amendment of BP-03.91 and other TDCJ policies related to correspondence rules. As a member of the TBCJ, all acts performed in his official capacity are statutorily located in Austin, Texas.

13. Defendant Director's Review Committee is a TDCJ committee whose duty is to review appeals of correspondence denials and is responsible for the interpretation and application of BP-03.91 and other TDCJ policy related to the correspondence rules. Plaintiff Zirus does not have access to information regarding any individual sitting upon the DRC. Zirus reserves his right to amend his Complaint to add DRC members upon discovery. The DRC is located in Huntsville, Texas.

14. Each Defendant is sued in his or her official capacity. At all times mentioned in this Complaint, each Defendant acted under the color of State law.

IV.
FACTS

BACKGROUND

15. Plaintiff Zirus is an Australian National wrongfully convicted by the State of Texas. Zirus is serving a 40 year sentence without the possibility of parole.

16. As a foreign national, Plaintiff Zirus does not have an established network of friends and family in America. Therefore, for his innocence campaign to gain the momentum necessary to help correct his wrongful conviction, he must form meaningful relationships with people on the outside of prison. In the 21st Century, the only meaningful way to acheive this is through social media and online penpal websites. However, Plaintiff Zirus cannot do this without breaking TDCJ policy and the potential of receiving disciplinary cases.

17. Plaintiff Zirus also asserts that outside support is essential to his mental and spiritual welfare during his incarceration in a foreign prison.

18. Plaintiff Zirus asserts that outside support for his innocence campaign is absolutely necessary to have his wrongful conviction taken serious by the Courts. This stance has been proven true time and time again - from Michael Morton, Anthony Graves to Timothy Cole. If these innocent people did not have outside support for their innocence it is very unlikely they would have been exonerated.

19. Daniel Echols, one of the West Memphis Three who was exonerated in 2011, explains: "You can have all the evidence in the world that you didn't do it, but unless theres outside attention focused on your case, it'll get swept under the rug".

20. Plaintiff Zirus is NOT asking this Court to address the merits of his actual innocence claims. Plaintiff understands that this Court lacks such jurisdiction. However, Zirus' innocence is the context in which TDCJ policy violates his First Amendment rights and it is important to recognize that such violations have a substantial impact on Zirus' innocence campaign.

21. Upon information and belief, Plaintiff Zirus asserts that the policies and practices challenged in this suit are designed to silence prisoners on prisoner rights issues and claims of actual innocence - speech that is constitutionally protected but may be politically damaging to the integrity of the carceral and judicial institutions of Texas. Plaintiff Zirus asserts that silencing politically damaging speech has no legitimate governmental interest - especially since society does not benefit when the innocent are wrongfully convicted or prisoners rights are abused behind the iron curtin of Texas prisons.

## INCARCERATED SEX OFFENDERS PROHIBITED FROM PENPAL WEBSITES

22. TDCJ policy BP-03.91(I)(B)(4) states that an "inmate serving a sentence for which registration as a sex offender is required is prohibited from placing an advertisement soliciting a pen pal on an internet website operated for that purpose, regardless of whether another person submits or pays for the advertisement for that inmate". See, www.tdcj.texas.gov/documents/policy/BP0391.pdf

23. Plaintiff Zirus is serving a sentence for which registration as a sex offender would be required. As such, he is prohibited by TDCJ policy from soliciting a penpal on an internet website.

24. Prior to the implementation of this policy, Plaintiff Zirus paid for a lifetime subscription to the penpal website www.PrisonInmates.com. The intent of his penpal profile on this website is to find people interested in advocating his innocence. See, www.prisoninmates.com/profile/ScottZirus01640002

25. On 11th April 2023 Plaintiff sent an eMessage to a friends wife, Audrey M. Lessner, asking her for help to contact www.PrisonInmates.com on his behalf to inquire about updating his penpal profile. See, Letter ID 1742764716.

26. The delivery of this eMessage correspondence was denied in accordance with BP-03.91 because Plaintiff was allegedly "soliciting a pen pal in violation of House Bill 607". Plaintiff appealed this denial to the Director's Review Committee (DRC) which was upheld on 6th June 2023. [See, APPENDIX A].

27. Plaintiff also filed a grievance alleging "that this prior restraint policy is unconstitutional in violation of the First, Eighth and Fourteenth Amendments". Plaintiff argues that the policy was deliberately designed to further disenfranchize and socially isolate those convicted of sex offenses. [See, Grievance #2023096508; APPENDIX B].

28. Plaintiff explained in the grievance that he is a foreign national with no friends and family in America. He is ACTUALLY INNOCENT and in order to gain support for his innocence campaign he needs a reliable means to reach like minded people who can act on his behalf to advocate his innocence. The only reliable means to do this while incarcerated is via a penpal website. This policy prohibits him from creating or maintaining a penpal profile, and subsequently impedes his innocence campaign by violating his rights established under the First Amendment.

29. Plaintiff also asserted in the grievance that "the social isolation and inherent disenfranchizement violates the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment".

30. On 23rd May 2023 the grievance response stated: "This policy was enacted by the Texas State legislature; therefore, the Texas Department of Criminal Justice has no control over it. No further action required".

31. Plaintiff appealed this response and explained that there "is absolutely no policy or law enacted by the Texas Legislature that requires, or even permits, TDCJ to prohibit inmates with sex offenses from placing an advertisement soliciting a penpal on the internet".

32. Presumably this alleged legislative act is H.B. 607 (cited by the eMessage denial - see paragraph 26 and APPENDIX A). H.B. 607 was a bill filed by State Rep. Shaheen during the 2023 Legislative Session. This same bill was filed by State Rep. Shaheen in four prior legislative sessions but has failed to pass the House. The most recent bill (H.B. 607) was left pending in the Committee on 16th March 2023. See, 2023 Bill Tracking TX H.B.607

33. Therefore, it is unquestionable that the Texas Legislature did NOT pass this law, and the policy is the creation of the Texas Board of Criminal Justice as it is enumerated in BP-03.91.

34. In response to this argument, the 15th June 2023 Step 2 grievance response states: "Your complaint has been reviewed. Step 1 has addressed your complaint. No further action warranted". Plaintiff did not receive this grievance back until after 6th September 2023. [See, APPENDIX B].

35. According to the Step 1 and 2 grievances, the TBCJ implemented this prior restraint policy because it was mandated by the Texas Legislature and therefore the TDCJ has no control over it.

36. Plaintiff Zirus strongly contests the legitimacy of this justification, and upon information and belief, asserts that the policy was implemented as an extra-legislative way to implement the bills filed by State Rep. Shaheen that could not pass the House. This conclusion is reasoned from the fact the policy and bill share the exact same wording.

37. Plaintiff also asserts that IF the grievance responses are true and the policy was implemented upon TBCJ's own accord, then there is no penological interest beyond abiding by presumed law to justify the policy. If this were true then the law upon which the policy is based is unconstitutional.

38. Plaintiff avers that there is no legitimate, neutral government interest in prohibiting those sentenced for an offense which registration is required from soliciting a penpal on an internet website.
Penpal websites have their own policies to ensure that their visitors are over the age of 18. People visit penpal websites for the express purpose of finding a prisoner to write. The websites often list the charges of the prisoner on the profile, and if they don't the prisoners charge is already public information and available on the TDCJ website. Furthermore, all penpal relationships are initiated by the freeworld person and TDCJ already monitors all phonecalls and in/out correspondences. There is nothing to suggest that those convicted of sex offenses have a propensity for deceptive or fraudent behaviour more than any other offense which is permitted to solicit penpals. If the Texas Legislature though the bill was a public necessity, it would have passed it in one of the four legislative sessions it was presented.

39. BP-03.91(I)(B)(4) is broadly being interpreted by the Director's Review Committee as prohibiting those convicted of a registratable offense from ANY type of penpal solicitation generally. For example, Plaintiff Zirus was denied his ability to submit his application for a penpal through "Adopt an Inmate".

40. Adopt an Inmate is a 501(c)3 non-profit organization dedicated to promoting the value and rehabilitation of people in prison. Its services are provided free of charge to both "adoptees" (prisoners) and "adopters" (freeworld people). Participants are matched based on common interests, location, age and other information provided by the adopters and adoptees. Adopt an Inmate is NOT an online penpal website, but rather a referal organization.

41. On 8th December 2023, Plaintiff Zirus completed an "Adoptee Application" form printed out by the Unit Mailroom from his digital mail as an "inter-active" correspondence. After completing the form he posted it to the designated address using the indigent program.

42. On 13th December 2023, Plaintiff Zirus received notice that this outgoing correspondence was denied in accordance with BP-03.91 because he was allegedly "soliciting a pen pal in violation of House Bill 607". Zirus appealled the decision to the Director's Review Committee. The denial was upheld [See, APPENDIX C].

43. The application of the policy is an absolute ban on penpals for those convicted of a registratable offense - both on the internet, through a charity by mail or any other means.

## SILENCING INCARCERATED VOICES ON SOCIAL MEDIA

44. TDCJ Policy prohibits incarcerated people from any form of social media.

45. Plaintiff is not sure of the exact policy which prohibits this form of free speech, but the only reference that he can identify is found in the Offender Orientation Handbook (February 2017) III.N.4 - under General Rules. It states: "Offenders are prohibited from maintaining active social media accounts for the purpose of soliciting, updating, or engaging others, through a third party or otherwise".

46. Plaintiff Zirus avers that this prior restraint policy is unconstitutional in violation of the First, Eighth and Fourteenth Amendment and is not reasonably related to a legitimate, neutral government interest, does not leave open another way to exercise the same constitutional rights to freedom of speech and association or obvious, easy alternatives to a prior restraint policy that would not restrict the right to free expression and association.

47. Social media allows users to gain access to information and communicate with one another. By prohibiting incarcerated people from using social media websites, TDCJ with one broad stroke bars access to what for many are the principal sources for knowing current events, speaking and listening in the modern public square and otherwise exploring the vast realms of human thought and knowledge.
Social media websites can provide perhaps the most powerful mechanisms available to a person to make his voice heard - this is incredibly important to a person like Plaintiff who is an innocent foreign national who needs public support to have their innocence recognized.

48. In Packingham v. North Carolina, 137 S.Ct. 1730 (2017), the U.S. Supreme Court explained that "even convicted criminals - and in some instances especially convicted criminals - might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives".

49. Plaintiff does NOT contend that he has a constitutional right to a laptop computer with an unlimited internet service connection, for the purpose of directly accessing social media websites. This is because Plaintiff does not need direct access to a computer or the internet to exercise the First Amendment right to social media since such can be done by a third person or service.

50. Plaintiff filed a grievance on this prior restraint policy as unconstitutional. The grievance response stated: "Inmates are not allowed social media. Please be advised if an inmate is found to have social media they may recieve a disciplinary infraction" [Grievance #2023099856; See, APPENDIX D]

51. In response Plaintiff explained that the grievance response was "absolutely correct" that inmates are not allowed social media, and this was "the very reason I file this grievance". The final grievance response stated: "You were appropriately advised at the Step 1 level. Currently, access to social media by TDCJ inmates is denied. This will remain in effect and is within policy".

DIGITAL MAIL

52. On 17th July 2023, TDCJ instituted digital mail on a select number of units, including the Robertson Unit.

53. On 6th September 2023 all TDCJ units moved to the digital mail platform.

54. The digital mail (also known as "digimail") are digitally scanned copies of physical letters, cards and photos. All prisoner correspondence is sent directly to the digital mail processing center in Dallas where it is scanned and sent to the prisoners tablet to be viewed digitally. The digital mail platform is designed to reduce the amount of dangerous contraband entering TDCJ facilities through the postal system.

55. Plaintiff does NOT challenge the constitutionality of the digital mail platform itself (abet it is likely necessary) - however he does challenge the constitutionality of the processes and procedures surrounding its implementation.

56. Correspondence procedures in TDCJ are governed by Board Policy 03.91. This policy is created and amended by the Texas Board of Criminal Justice.

EXCESSIVE DELAY

57. The bulletin released by TDCJ concerning the Digimail states that "mail will be available within three business days" [Digital Mail Bulletin (09/06/2023)]

58. However, prior to the TDCJ-wide implementation of digital mail, there has been an excessive delay of 20+ days for prisoner mail being processed by the digital mail processing center in Dallas for the small select number of units.

59. After the TDCJ-wide implementation the delay increased to over 35 days to process prisoner mail. As of December 2023 that delay is over 60 days. Plaintiff asserts that this delay is excessive and violates his First Amendment rights.

60. For EXAMPLE, the company "Inmates R Us" sent Plaintiff a letter postmarked 22nd September 2023. The digital mail processing center did not scan and send the correspondence to the unit for approval until 2nd December 2023 (72 days).
Another EXAMPLE, the charity "Adopt an Inmate" sent Plaintiff a letter postmarked 25th September 2023. The digital mail processing center did not scan and send the correspondence to the unit for approval until 2nd December 2023 (69 days).

61. Plaintiff filed a grievance on the excessive delay of the digimail. The Step 2 response stated: "Agency Administration is aware of the processing delays of digital mail and are monitoring the situation" [See, Grievance #2024016476; APPENDIX E].

62. Plaintiff acknowledges that the digital mail is a new platform and that it needs time for it to operate smoothly - however, as of this filing, the platform has been implemented for well over 9 months and the delay in mail has continued to be excessive. Without court intervention, this trend is not likely to change and TDCJ prisoners will not receive their correspondence within a time period which is reasonable.

## REFUSED MAIL WITHOUT NOTICE

63. "As per Board Policy 3.90, any mail received after July 17, 2023 to the unit will be returned to the sender as refused" [Step 1 Grievance Response #2023-128791].

64. As such, all general mail that is sent to the unit is rejected and returned to sender **without notice** to the addressee prisoner. Because no notice is provided, there is no way for the prisoner to know, nor the opportunity for, the prisoner to contact the sender or even know that the sender has written.

65. Plaintiff filed a grievance on general mail being rejected and returned to sender without notice to the addressee prisoner. The grievance response stated that "any mail received after July 17, 2023 to the unit will be returned to the sender as refused". In response, Plaintiff said that "this is exactly correct - and is why it is a violation of the first and fourteenth Amendments.

Just because TBCJ creates or amends policy does not render it constitutional. The constitution requires that if mail is denied or rejected that we receive notice and a reasonable chance to challenge the rejection decision". The final grievance response stated that: "Effective July 17, 2023, all general correspondence addressed to the Robertson Unit is to be sent to the Digital Mail Processing Center in Dallas, Texas. This was announced on the TDCJ website and this was sent out on the tablets as a notification prior to going into effect" [Grievance #2023128791; APPENDIX F]

66. Plaintiff does not challenge the notice given about the policy change, nor does Plaintiff allege he has a right to receive general mail sent to the unit - what he asserts is that he has a constitutional right to due notice when such mail is rejected and a procedure to challenge said rejection if erroneous.

## "NON-INTERACTIVE" EXHIBITS

67. Upon request, TDCJ policy provides physical paper copies of digimail that are "interactive" - i.e. requires a signature. All other "non-interactive" print outs are prohibited.

68. Because of TDCJ policy prohibiting "non-interactive" print outs, there is absolutely no way that friends/family or an organization can make photocopies of legal filings, exhibits or studies to be sent to a TDCJ prisoner to be attached and submitted to the Court to advance litigation.

69. This policy obstructs access to courts in that it prevents prisoners from obtaining physical paper copies or photocopies sent from friends/family that need to be attached to legal filings. This substantially burdens a prisoners ability to comply with Court rules and prove their claims through attaching exhibits or provide the required number of copies of a filing.

70. For EXAMPLE, if Plaintiff wanted to attach a copy of BP-03.91 as an exhibit in this suit, he is unable to obtain a paper copy to attach it. The same is true with the grievances exhausting the issues in this suit. Plaintiff must attach the originals because he is unable to send them to someone in the freeworld in order to have them photocopies. TDCJ does not provide any type of photocoping services that could resolve this issue.

71. Plaintiff asserts that this violates his right to meaningful access to the courts.

72. Plaintiff filed a grievance on this issue, however it was not directly addressed in the grievance response [See, Grievance #202312879; APPENDIX F].

V.
LEGAL CLAIMS

73. BP-03.91(I)(B)(4) and any other policy prohibiting TDCJ prisoners from any form of social media or online penpal services violates Plaintiff Zirus' rights and constitutes a violation of the Freedom of Speech and Association Clause of the First and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts that such constitutes a violation of the Eighth Amendment to the United States Constitution.

74. The Board Policy that permits rejected mail to be returned to sender without notice to the addressee prisoner, and does not allow for the opportunity to appeal or challenge said rejection violates Plaintiff Zirus' rights and constitutes a violation of the Procedural Due Process clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also asserts that such constitutes a violation of the First Amendment to the United States Constitution.

75. The Board Policy that does not allow TDCJ prisoners access to physical paper photocopies of legal filings, exhibits, and studies (i.e, non-interactive correspondence) that must be attached and submitted to the Court violates Plaintiff Zirus' rights and constitutes a violation of Access To Courts clause of the First and Fourteenth Amendments to the United States Constitution.

76. The named Defendants are legally responsible for these violations of Plaintiff Zirus' rights because they created or amended the policy that causes the harm to said rights.

77. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the declaratory and injunctive relief which Plaintiff Zirus seeks.

VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zirus respectfully prays that this Court enter judgment granting Plaintiff:

78. A declaration that the acts and omissions described herein violate Plaintiffs rights under the Constitution and laws of the United States.

79. An injunction ordering all named Defendants to abstain from enforcing BP-03.91 (I)(B)(4) and any other policy prohibiting TDCJ prisoners from any form of social media or online penpal services; and to amend said policy to conform with the constitutional holdings of this Court.

80. An injunction ordering all named Defendants to provide notice to a TDCJ prisoner when incoming mail is rejected and to have a procedure to challenge said rejection.

81. An injunction ordering all named Defendants to amend policy that does not allow TDCJ prisoners access to physical paper photocopies of legal filings, exhibits and studies that must be attached and submitted to the Court to advance litigation.

82. An injunction ordering all named Defendants to institute policy and procedures that resolves the current excessive delay of digital mail and ensures that said correspondence is scanned and delivered within 3 working days from receipt at the Digital Mail Processing Center in Dallas.

83. A jury trial on all issues triable by jury.

84. Plaintiffs costs in this suit

85. Any additional relief this Court deems just, proper and equitable.

20th February 2024

Respectfully Submitted,

Scott Zirus #1640002
Robertson Unit
12071 F.M. 3522
Abilene, TX 79601

## VERIFICATION

I, Scott Zirus, have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Abilene, Texas on 20th day of February, 2024.

*[signature]*

Scott Zirus #1640002