**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SCOTT ZIRUS** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:24-CV-224** |
| | § | |
| **PATRICK O'DANIEL**, *et al.* | § | |
| *Defendants.* | § | |

---

**DEFENDANTS TAMMY SHELBY, SYDNEY ZUIKER, NATE SPRINKLE,**
**BILL WELCH, SICHAN SIV, ERIC NOCHOLS, RODNEY BURROW,**
**AND MOLLY FRANCIS'S MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General
for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

**MICHAEL CALB**
Assistant Attorney General
*Attorney-in-Charge
State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
**OFFICE OF THE**
**ATTORNEY GENERAL**
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2080
Fax: (512) 370-9814

**COUNSEL FOR DEFEDNANTS**

# TABLE OF CONTENTS

I.    STATEMENT OF THE CASE .................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................................. 2

III.  ARGUMENT .......................................................................................................................... 3

A.  Plaintiff lacks standing to assert any access-to-courts claim or challenge to TDCJ's mail delays, lack of notice of mail denials, or prohibition on social media. ......................... 3

1.  Access-to-courts ........................................................................................................ 4

2.  Mail delays. .............................................................................................................. 6

3.  Returned mail without notice. ................................................................................... 6

4.  Prohibition on social media accounts......................................................................... 6

B.  Plaintiff's access-to-courts claims and challenges to TDCJ's mail delays, lack of notice of mail denials, and prohibition on social media are also barred by Defendants' sovereign immunity. ................................................................................................................. 7

C.  Plaintiff fails to state any constitutional claim. ................................................................ 8

1.  Plaintiff fails to state a First Amendment free speech claim...................................... 8

a.  Pen pals for sex offenders ............................................................................ 9

b.  Social media accounts and podcasts ........................................................... 10

c.  Mail delays ................................................................................................. 11

d.  Returned mail without notice ..................................................................... 12

2.  Plaintiff fails to state a First Amendment access-to-courts claim. ........................... 12

3.  Plaintiff fails to state an Eighth Amendment claim. ................................................ 14

4.  Plaintiff fails to state a Fourteenth Amendment procedural due process claim. .... 14

a.  Returned mail without notice ..................................................................... 15

b.  Revocation of tablet privileges .................................................................. 15

5.  Plaintiff fails to state a Fourteenth Amendment equal protection claim. ................ 17

IV.   CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITES

Page(s)

Cases

*Air Vac EMS, Inc. v. Texas,*
   851 F.3d 507 (5th Cir. 2017) ...................................................................................................14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 9, 10

*Atencio v. Allison,*
   No. 1:21-cv-00191, 2021 WL 2982917 (E.D. Cal. July 15, 2021) ........................................22

*Baranowski v. Hart,*
   486 F.3d 112 (5th Cir. 2007) ...................................................................................................24

*Beene v. Hammer,*
   No. 3:02-cv-158, 2003 WL 21673456 (N.D. Tex. July 15, 2003) .........................................11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................................9

*Bell v. Woods,*
   382 F. Appx. 391 (5th Cir. 2010) ..................................................................................... 16, 17

*Bounds v. Smith,*
   430 U.S. 817 (1977) ................................................................................................................19

*Bourque v. Dir., TDCJ-CID,*
   No. 6:23-cv-294, 2023 WL 6985722 (E.D. Tex. Aug. 28, 2023) .........................................22

*Brewer v. Wilkinson,*
   3 F.3d 816 (5th Cir. 1993) ................................................................................................ 19, 20

*Burrell v. DOCCS,*
   655 F. Supp. 3d 112 (N.D.N.Y. 2023) ...................................................................................22

*Butts v. Martin,*
   877 F.3d 571 (5th Cir. 2017) ...................................................................................................24

*Cartner v. Lowndes Cty.,*
   89 F. Appx. 439 (5th Cir. 2004) ...................................................................................... 19, 20

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) ...................................................................................................14

*City of L.A. v. Lyons,*
   461 U.S. 95 ......................................................................................................................... 10, 11

*CleanCOALition v. TXU Power,*
   536 F.3d 469 (5th Cir. 2008) .....................................................................................................9

*Cleveland v. Bell,*
   938 F.3d 672 (5th Cir. 2019) ...................................................................................................21

*Colone v. Woods,*
   No. 1:16-cv-113, 2017 WL11779191, at *2 (E.D. Tex. July 25, 2017), ................................23

*Croft v. Gov. of Tex.,*
   562 F.3d 735 (5th Cir 2009) ...................................................................................................10

*Cunningham v. Barragas,*
   No. 1:24-cv-41, 2024 WL 3014094 (E.D. Cal. June 12, 2024) .............................................22

*Domino v. TDCJ,*
   239 F.3d 752 (5th Cir. 2001) ...................................................................................................21

*Donnelly v. Edwards*,
  95 F. Appx. 702 (5th Cir. 2004) ..................................................................................... 19

*Duarte v. City of Lewisville, Tex.*,
  858 F.3d 348 (5th Cir. 2017) ........................................................................................... 24

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ..................................................................................... 11, 19

*Ex parte Young*,
  209 U.S. 123 (1908) ......................................................................................................... 14

*Ferri v. N.M. Dep't of Corr.*,
  2020 WL 1935167 (D.N.M. Apr. 22, 2020) ................................................................... 23

*Geiger v. Jowers*,
  404 F.3d 371 (5th Cir. 2005) ........................................................................................... 24

*Gregory v. Texas Youth Comm'n*,
  111 F. App'x 719 (5th Cir. 2004) .................................................................................... 14

*Harper v. Showers*,
  174 F.3d 716 (5th Cir. 1999) ........................................................................................... 21

*Henderson v. Stewart*,
  82 F.3d 415, 1996 WL 167212 (5th Cir. Mar. 13, 1996) ............................................... 12

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ............................................................................................. 9

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ......................................................................................................... 23

*Jackson v. Barrick*,
  No. 6:23-cv-617, 2024 WL 1234950 (E.D. Tex. Mar. 22, 2024) ................................... 18

*Johnson v. Dallas Indep. Sch. Dist.*,
  38 F.3d 198 (5th Cir. 1994) ............................................................................................. 14

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) ........................................................................................... 20

*Jones v. Lumpkin*,
  No. 4:21-cv-3638, 2023 WL 4275476 (S.D. Tex. June 29, 2023) .................................. 18

*Justice v. Kennedy*,
  No. C-12-005, 2012 WL 4718633 (S.D. Tex. Sept. 12, 2012) ....................................... 11

*K.P. v. Leblanc*,
  627 F.3d 115 (5th Cir. 2010) ........................................................................................... 10

*Kane Enters. v. MacGregor (USA) Inc.*,
  322 F.3d 371 (5th Cir. 2003) ........................................................................................... 13

*Lewis v. Casey*,
  518 U.S. 343 (1996) ................................................................................................... 11, 19

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) ............................................................................................ 14

*Lewis v. Zmuda*,
  No. 23-3236, 2024 WL 359332 (D. Kan. Jan. 31, 2024) ................................................ 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................................... 10

*Matez v. Foley*,
  No. 2:17-cv-134-Z, 2020 WL 2926464 (N.D. Tex. June 3, 2020) .................................. 24

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................................... 21, 22

iv

*Mayfield v. Tex. Dep't of Crim. Just.*,
  529 F.3d 599 (5th Cir. 2008) ..................................................................................15
*McAlister v. Livingston*,
  348 F. Appx. 923 (5th Cir. 2009) .............................................................................15
*Miller v. Wathen*,
  No. 7:04-cv-136, 2009 WL 874601 (N.D. Tex. Apr. 2, 2009) ................................10
*Myers v. Klevenhagen*,
  97 F.3d 91 (5th Cir. 1996) .......................................................................................23
*Norton v. Dimazana*,
  122 F.3d 286 (5th Cir. 1997) ...................................................................................19
*Overton v. Bazzetta*,
  539 U.S. 126 (2003) .................................................................................................15
*Parratt v. Taylor*,
  451 U.S. 527 (1981) .................................................................................................23
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ...................................................................................................13
*Perry v. Secretary, Fla. Dep't of Corr.*,
  664 F.3d 1359 (11th Cir. 2011) ...............................................................................16
*Plotkin v. IP Axess.*,
  407 F.3d 690 (5th Cir. 2005) ...................................................................................10
*Public Citizen, Inc. v. Bomer*,
  274 F.3d 212 (5th Cir. 2001) .............................................................................10, 12
*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................................10
*Richards v. Johnson*,
  115 F. Appx. 677 (5th Cir. 2004) .............................................................................19
*Shaw v. Murphy*,
  532 U.S. 223, (2001) ................................................................................................15
*Sias v. La.*,
  146 F. Appx. 719 (5th Cir. 2005) ........................................................................12, 20
*Steele v. U.S. Postal Serv.*,
  No. 2:22-cv-44, 2022 WL 17538740 (W.D. Tex. Dec. 8, 2022) ............................17
*Stevens v. Adams*,
  30 F.3d 1494, 1994 WL 399210 (5th Cir. July 21, 1994) .......................................19
*Stotter v. Univ. of Tex. San Antonio*,
  508 F.3d 812 (5th Cir. 2007) ...................................................................................23
*Tex. A & M Univ. Sys. v. Koseoglu*,
  233 S.W.3d 835 (Tex. 2007) .....................................................................................14
*Thornburgh v. Abbott*,
  490 U.S. 401 (1989) .................................................................................................18
*Turner v. Safely*,
  482 U.S. 78 (1987) ...............................................................................................14, 15
*United States v. Galloway*,
  951 F.2d 64 (5th Cir. 1992) .....................................................................................24
*Walker v. Livingston*,
  381 F. App'x 477 (5th Cir. 2010) .............................................................................13
*Walter v. Clark*,
  No. 2:17-cv-221, 2019 WL 5685340 (N.D. Tex. Feb. 25, 2019) .......................17, 18

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................................. 10

*Will v. Mich. Dep't. of State Police,*
    491 U.S. 58 (1989) ................................................................................................... 14

*Wood v. Collier,*
    836 F.3d 534 (5th Cir. 2016) .................................................................................... 25

*Woods v. Comm'r of the Ind. Dep't of Corr.,*
    652 F.3d 745 (7th Cir. 2011) .................................................................................... 16

*Woods v. Edwards,*
    51 F.3d 577 (5th Cir. 1995) ...................................................................................... 24

*Wottlin v. Fleming,*
    136 F.3d 1032 (5th Cir. 1998) .................................................................................. 25

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ................................................................................................. 23

Statutes

42 U.S.C. § 1983 ............................................................................................................ 8, 13, 14

TEX. GOV'T CODE §§ 501.007 ...................................................................................... 23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT ZIRUS | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:24-CV-224 |
| | § | |
| PATRICK O'DANIEL, *et al.* | § | |
| *Defendants.* | § | |

---

**DEFENDANTS TAMMY SHELBY, SYDNEY ZUIKER, NATE SPRINKLE,
BILL WELCH, SICHAN SIV, ERIC NOCHOLS, RODNEY BURROW,
AND MOLLY FRANCIS'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

Defendants Tammy Shelby ("Shelby") and the nine members of the Texas Board of Criminal Justice— Sydney Zuiker, Nate Sprinkle, Bill Welch, Sichan Siv, Eric Nichols, Rodney Burrow, and Molly Francis (collectively, the "Board Members")—through the Office of the Attorney General of Texas, file this motion to dismiss Plaintiff Scott Zirus's Amended Complaint (D.E. 14) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support of their motion, Defendants respectfully offer the following:

## I.    STATEMENT OF THE CASE

Plaintiff is a convicted sex offender confined to the custody of the Texas Department of Criminal Justice ("TDCJ").  Proceeding *pro se* and *in forma pauperis*, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against the Board Members challenging various aspects of TDCJ's correspondence policies and the implementation thereof.  D.E. 1.  Plaintiff then sought and received leave to amend his complaint, including by adding new claims against Shelby, the supervisor of TDCJ's Mail System Coordinators Panel.  D.E. 13 ("Compl."); July 22, 2024 Text Order.

Plaintiff's Amended Complaint raises six distinct challenges to TDCJ's policies and practices governing inmate correspondence.  *First*, Plaintiff challenges TDCJ's alleged prohibition on sex

offenders soliciting pen pals. Compl. at ¶¶ 22-43. *Second*, Plaintiff challenges TDCJ's alleged prohibition on inmates maintaining active social media accounts or disseminating podcasts. *Id.* at ¶¶ 44-59. *Third*, Plaintiff challenges the alleged excessive delays inmates have experienced in receiving incoming mail following the roll-out of TDCJ's digital mail platform. *Id.* at ¶¶ 60-70. *Fourth*, Plaintiff challenges the alleged lack of notice provided to inmates when mail sent to prison units is denied and returned to sender. *Id.* at ¶¶ 71-74. *Fifth*, Plaintiff challenges the alleged restriction on inmates obtaining paper copies of "non-interactive" documents uploaded to TDCJ's digital mail platform, including scientific studies and research papers requested from public libraries. *Id.* at ¶¶ 75-93. *Sixth*, Plaintiff challenges TDCJ's alleged unwritten policy of arbitrarily suspending or revoking access to inmates' tablet computers—including the messaging and legal research capabilities thereof—without adequate due process. *Id.* at ¶¶ 94-106.

Plaintiff alleges that these policies and practices violate his First, Eighth, and Fourteenth Amendment rights. *Id.* at ¶¶ 107-113. Plaintiff seeks a declaration of wrongdoing and an injunction requiring that Defendants reinstate his tablet privileges and amend, revoke, and/or cease implementation of its policies on inmate correspondence. *Id.* at ¶¶ 114-120. As described below, however, none of the challenged policies or practices rises to the level of a constitutional violation, and Plaintiff lacks standing to challenge many of them in the first place. Moreover, many of Plaintiff's claims are barred by Defendants' sovereign immunity. The Court should therefore dismiss Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject-matter jurisdiction. In determining whether subject-matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916

(5th Cir. 2001).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (internal quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556).  Thus, while the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess.*, 407 F.3d 690, 696 (5th Cir. 2005).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    ARGUMENT

### A.  Plaintiff lacks standing to assert any access-to-courts claim or challenge to TDCJ's mail delays, lack of notice of mail denials, or prohibition on social media.

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To establish standing, a plaintiff must show: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Tex.*, 562 F.3d 735, 745 (5th Cir 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The first element cannot be satisfied by a "generalized grievance"; rather, the injury must

"affect the plaintiff in a personal and individual way." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218-19 (5th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560 & n. 1); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party. . . ."). Injury to others cannot suffice, no matter how similarly situated they may be. *See, e.g., Miller v. Wathen*, No. 7:04-cv-136, 2009 WL 874601, at *3 (N.D. Tex. Apr. 2, 2009) ("To the extent that Plaintiff seeks injunctive relief and monetary damages on behalf of other inmates at the Allred Unit, he has no standing to assert such claims.") (citing *Warth*, 422 U.S. at 499). Where a plaintiff seeks injunctive relief, he has the burden of showing that there is "[a] real and immediate threat of future injury" to him that "is not merely conjectural." *K.P. v. Leblanc*, 627 F.3d 115, 122-23 (5th Cir. 2010) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 107 n. 8 (1983)).

Here, as described below, Plaintiff lacks standing to assert any access-to-courts claim or challenge to TDCJ's mail delays, lack of notice of mail denials, or prohibition on social media account because he fails to allege a concrete, particularized injury in fact.[1]

### 1. Access-to-courts

An inmate only has standing to challenge his access to the courts if he has suffered an "actual injury" stemming from the purported restriction. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Specifically, he must plead "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 349; *see also Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (plaintiff must show "that his position as a litigant was prejudiced" as a direct result of the denial of access). Absent allegations of actual prejudice to existing or contemplated litigation, courts will not hesitate to dismiss access-to-courts claims on standing grounds. *See, e.g., Beene v.*

---

[1] While Plaintiff alleges that he filed grievances concerning some of these issues, and attached copies of those grievances to his original complaint, nothing in those grievances indicates that he is *personally* suffering or will imminently suffer a concrete injury so as to confer standing. *See* Compl. at ¶¶ 50-51, 73, 80; D.E. 1-6; D.E. 1-7; D.E. 1-8. In fact, the grievances complain about the policies and practices in very general terms and the only vague mention of harm at all is the effects on "incarcerated people" writ large. *Id.*

*Hammer*, No. 3:02-cv-158, 2003 WL 21673456, at *3 (N.D. Tex. July 15, 2003) (plaintiff lacked standing to assert access-to-courts claim where he did not allege actual prejudice from denial of legal materials); *Justice v. Kennedy*, No. C-12-005, 2012 WL 4718633, at *6 (S.D. Tex. Sept. 12, 2012) (same).

Here, Plaintiff complains about two alleged restrictions on TDCJ inmates' access to the courts, but does not allege that either of these restrictions resulted in actual prejudice to his existing or contemplated litigation so as to confer standing to sue.

*First*, Plaintiff complains that inmates are not allowed to obtain paper copies of digital mail unless something in the correspondence requires a signature, and that as a result they are unable to attach documents received in the mail as exhibits to court filings. Compl. at ¶¶ 75-93. However, Plaintiff only alleges that he personally was denied a paper copy of only one document; namely, a Texas A&M article on prison heat which he requested from a local public library. *Id.* at ¶¶ 86-87. While Plaintiff alleges that that article was "required as an exhibit for the lawsuit [in which] he was challenging excessive heat conditions" (*id.* at ¶ 87), he does not allege any actual prejudice which resulted from his failure to attach that document as a paper exhibit (versus, for example, simply citing it in his pleading). Absent such allegations, Plaintiff lacks standing to challenge TDCJ's restriction on paper copies. *See, e.g., Sias v. La.*, 146 F. Appx. 719, 720 (5th Cir. 2005) (affirming dismissal of inmate's access-to-courts claim where he did not assert "a coherent argument showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court.").[2]

*Second*, Plaintiff alleges that TDCJ arbitrarily suspends or revokes access to inmates' tablet computers, including the legal research capabilities thereof, limiting inmates' ability to access caselaw. *Id.* at ¶¶ 94-106. However, while Plaintiff alleges that his tablet was deactivated on May 21, 2024

---

[2] Plaintiff hypothesizes that he *would* be unable to obtain a paper copy of TDCJ's inmate correspondence policy "*if* he wanted to attach a copy" of that policy "as an exhibit in this suit," but nowhere indicates that he really wants to do so, much less that he is being prejudiced by his inability to do so. Compl.. at ¶ 78 (emphasis added). Allegations of hypothetical prejudice are insufficient. *See Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001) (speculative prejudice insufficient to confer standing for access-to-courts claim).

following allegations that he was engaged in trafficking and trading, he does not allege any actual prejudice to existing or contemplated litigation as the result, and thus lacks standing to assert an access-to-courts claim premised on tablet access.

### 2.    Mail delays.

Plaintiff complains that inmates have experienced excessive delays in receiving mail following the roll-out of TDCJ's digital mail platform. *Id.* at ¶¶ 65-70.  However, he only lists two pieces of mail addressed to him which arrived late, and does not give any indication whatsoever that he suffered an injury from the delay. *Id.* at ¶ 68.  He therefore lacks standing to challenge the alleged delays in inmate mail. *See Henderson v. Stewart*, 82 F.3d 415, 1996 WL 167212, at *1 (5th Cir. Mar. 13, 1996) ("[Plaintiff] argues that his incoming and outgoing legal and personal mail was delayed, and that enclosures were removed from one of his outgoing legal letters, resulting in a denial of access to the courts and a violation of his First Amendment rights. Again, he has shown no injury, therefore, the dismissal of the denial of access claim was not an abuse of discretion.")

### 3.    Returned mail without notice.

Plaintiff complains that TDCJ does not provide inmates notice when mail is returned to sender because it was sent to their prison units instead of the digital mail center. *Id.* at ¶¶ 60-64, 71-74.  However, he does not allege that TDCJ has denied *him* notice that mail addressed to him at his unit was returned for this reason, much less that *he* is suffering (or imminently will suffer) an injury from that lack of notice.  He therefore lacks standing to challenge the alleged lack of notice for denied mail.

### 4.    Prohibition on social media accounts.

Plaintiff complains that TDCJ's Board Policy 03.91 ("BP-03.91") prohibits inmates from having social media accounts. *Id.* ¶¶ 44-49; Exhibit A.[3]  However, he does not allege that *he* personally

---

[3] Because Plaintiff references BP-03.91 in his Complaint and that policy is central to his lawsuit, the Court may consider its contents on this motion without converting it into a motion for summary judgment.. *See Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). The policy is also publicly available, and thus fair

wants to have a social media account, much less that *he* is suffering (or imminently will suffer) an actual injury by his inability to have one. He therefore lacks standing to challenge that prohibition.

**B. Plaintiff's access-to-courts claims and challenges to TDCJ's mail delays, lack of notice of mail denials, and prohibition on social media are also barred by Defendants' sovereign immunity.**

Eleventh Amendment sovereign immunity prohibits suits against a state—including suits against state actors in their official capacities—unless the state has waived its immunity or Congress has abrogated immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010). Where applicable, this immunity provides a "jurisdictional bar [that] applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100. Congress did not waive Eleventh Amendment immunity when it passed 42 U.S.C. § 1983. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 66 (1989). Nor has the State of Texas waived immunity for claims brought under that section. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Thus, unless some exception applies, Defendants' immunity remains intact.

In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court created a narrow exception to Eleventh Amendment immunity allowing plaintiffs "to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). However, "[t]o seek relief under the *Ex parte Young* exception, a plaintiff must establish standing by showing 1) injury in fact; 2) causation; and 3) redressability." *Gregory v. Texas Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004) (citing *Lujan*, 504 U.S. at 560-61); *see also Air Vac EMS, Inc. v. Texas*, 851 F.3d 507, 513-14 (5th Cir. 2017) ("[T]here is significant overlap between standing and *Ex parte Young*'s applicability."); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (holding that lack of standing precluded plaintiff from seeking an injunction under *Ex parte Young*) (quotation omitted). Here, as described above, Plaintiff lacks standing to assert access-to-court claims or

---

game for judicial notice: https://www.tdcj.texas.gov/documents/policy/BP0391.pdf (last visited 9/2/2024).

challenge TDCJ's mail delays, lack of notice of mail denials, and prohibition on social media. *Surpa* Section III.A. Because he lacks standing, Plaintiff cannot seek injunctive relief based on those claims or challenges under the *Ex parte Young* exception to sovereign immunity. *Gregory*, 111 F. App'x at 721.

### C. Plaintiff fails to state any constitutional claim.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a right secured by the Constitution and a violation of that right by one or more state actors. *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). Plaintiff fails to allege any such violation.

### 2. Plaintiff fails to state a First Amendment free speech claim.

It is well settled that "a prison inmate retains those [First Amendment] rights that are not inconsistent with his status as a prisoner." *Turner v. Safely*, 482 U.S. 78, 95 (1987) (quotation omitted). A prison may impose restrictions on a prisoner's First Amendment rights so long as they are "reasonably related to legitimate penological interests." *Id.* at 89. Several factors are relevant to the reasonableness inquiry. First, there must be a "valid, rational connection" between the regulation and the objective set forth to justify it. *Id.*. Second, the inmates must have an alternative means of exercising the restricted right. *Id.* at 90. Third, the impact of accommodating the asserted right on prison staff, other inmates, and prison resources generally must be considered. *Id.* Last, the regulation must not be an "exaggerated response" that ignores an alternative which would accommodate the inmates' First Amendment rights at a *de minimus* cost to legitimate penological interests. *Id.* at 90–91. "[R]ationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008).

In applying the *Turner* factors, the burden is not on prison officials to prove the validity of the regulation; rather, it falls to the inmates to disprove it. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Moreover, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections

system and for determining the most appropriate means to accomplish them." *Id.*; *see also Shaw v. Murphy*, 532 U.S. 223, 229, (2001) (courts are "ill equipped" to deal with the complex problems facing prisons). Where a prison regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. Appx. 923, 932-32 (5th Cir. 2009).

Here, Plaintiff asserts that TDCJ is violating the First Amendment's free speech clause by: (i) prohibiting sex offenders from soliciting pen pals; (ii) prohibiting inmates from maintaining social media accounts or disseminating podcasts; (iii) causing delays in inmates receiving digitally scanned mail; and (iv) failing to provide notice to inmates when mail sent to prison units instead of the digital mail processing center is denied and returned to sender. As described below, the law is clear that none of these alleged policies or practices violate the First Amendment.

### a.    Pen pals for sex offenders.

BP-03.91 states that "an inmate serving a sentence for which registration as a sex offender is required is prohibited from placing an advertisement soliciting a pen pal on an Internet website operated for that purpose, regardless of whether another person submits or pays for the advertisement for the inmate." Compl. at ¶ 22; Ex. A at § 1.B.4. Plaintiff alleges that, prior to the implementation of this policy, he had paid for lifetime subscription to a pen pal website (prisoninmates.com) "to find people interested in advocating his innocence." Compl. at ¶ 24. After the policy came into effect, Plaintiff alleges that he was prohibited from sending a message to a friend's wife asking to update his profile on hat website. *Id.* at ¶¶ 25-26.

While the Fifth Circuit has not specifically addressed whether prison officials can prohibit inmates from soliciting pen pals on pen pal websites, other circuits have upheld such prohibitions under the *Tuner* test. *See, e.g., Perry v. Secretary, Fla. Dep't of Corr.*, 664 F.3d 1359, 1364-67 (11th Cir. 2011); *Woods v. Comm'r of the Ind. Dep't of Corr.*, 652 F.3d 745, 751 (7th Cir. 2011). In both *Perry* and *Woods*, the court identified legitimate penological interests in preventing inmates from soliciting pen

pals on pen pal websites, including the potential for fraud, and held that inmates had ample alternative means of communicating with the outside world other than through such solicitation. *Id.* Here, similarly, TDCJ's prohibition is limited to the *solicitation* of pen pals on pen pal websites, and there is nothing stopping Plaintiff from obtaining pen pals through other means, or from cultivating contacts in the outside world who may be sympathetic to their plight.

Notably, the prohibition Plaintiff challenges is narrower than the prohibition challenged in *Perry* and *Woods* in that it only applies to sex offenders, not all inmates. Clearly, TDCJ has determined that there is a heightened risk that sex offenders may use pen pal websites to solicit future victims. The Fifth Circuit recognized a similar risk in *Bell v. Woods*, when it upheld TDCJ's policy of prohibiting sex offenders from participating in computer-related vocational courses. 382 F. Appx. 391, 392-93 (5th Cir. 2010) ("[T]here are also rational reasons why the State might restrict sexual offenders from using computers. Such a restriction prevents sexual offenders from attempting to . . . contact potential victims over the internet."). As in *Bell*, the Court should defer to TDCJ's concerns about sex offenders soliciting victims over the internet and hold that the prohibition on soliciting pen pals through pen pal websites is reasonably related to legitimate penological interests.[4]

### b.    Social media accounts and podcasts.

Texas federal district courts have uniformly upheld TDCJ's prohibition on inmates maintaining social media accounts "through a third party or otherwise." *Duenes v. Wainwright*, No. A-17-cv-726, 2017 6210904, at *2-4 (W.D. Tex. Austin Div. Dec. 7, 2017) ("[Plaintiff] therefore fails to state a claim that his constitutional rights were violated by the enactment and implementation of a policy that prohibits his . . . access to social media."); *Walter v. Clark*, No. 2:17-cv-221, 2019 WL 5685340, at *9-11 (N.D. Tex. Feb. 25, 2019) (same), *rec. adopted*, 2019 WL 5685165 (N.D. Tex. Nov.

---

[4] Plaintiff takes issue with a grievance response in which TDCJ stated that Texas law prohibits sex offenders from soliciting pen pals. Compl. at ¶¶ 30-36. According to Plaintiff, the referenced House Bill never passed. *Id.* This dispute is immaterial, however, because a TDCJ policy need not mirror legislation to be constitutional.

1, 2019); *see also Steele v. U.S. Postal Serv.*, No. 2:22-cv-44, 2022 WL 17538740, at *5 (W.D. Tex. Dec. 8, 2022) ("Plaintiff has no right to access social media"). In both *Duenes* and *Walter*, the courts concluded that restricting inmates from social media was reasonably related to legitimate penological interests under *Turner* and consistent with First Amendment jurisprudence allowing prison officials to bar access to typewriters and computers. *Id.* Given that Plaintiff challenges the exact same restriction, this Court should similarly dismiss Plaintiff's social media-related claims.

Plaintiff alleges that he should not have received a disciplinary conviction for recording a podcast under TDCJ's social media policy because, unlike traditional social media, a podcast "does not enable users to communicate with other users" and "is essentially a one-way street of information." Compl. at ¶¶ 52, 56. Whether a podcast objectively counts as social media is immaterial, however. All that matters is that *TDCJ* characterizes podcasts as social media, that courts have already upheld TDCJ's social media prohibition, and that deference must be afforded to prison officials' judgment concerning appropriate methods of communication with the outside world. *See Duenes*, 2017 6210904, at *2-4; *Walter*, 2019 WL 5685340, at *9-11; *Thornburgh*, 490 U.S. at 407-410. Plaintiff's First Amendment challenge to restrictions on podcasts as somehow distinct from social media is therefore meritless.

### c. Mail delays.

Prisoners enjoy the First Amendment right to free speech which encompasses the right to both send and receive mail. *Thornburgh*, 490 U.S. at 406-07. However, "[a] delay in a prisoner's mail, without more, does not violate his constitutional rights." *Jackson v. Barrick*, No. 6:23-cv-617, 2024 WL 1234950, at *2 (E.D. Tex. Mar. 22, 2024); *see also Jones v. Lumpkin*, No. 4:21-cv-3638, 2023 WL 4275476, at *9 (S.D. Tex. June 29, 2023) ("[A]n allegation that a prisoner's mail was delayed, without more, is insufficient to show a violation of the First Amendment."). Here, Plaintiff complains about generalized delays in incoming mail, and mentions two letters (from companies called "Inmates R Us"

11

and "Adopt an Inmate") which arrived to him late, but does not explain how those delays impacted his freedom of expression. Compl. at ¶¶ 65-70. Thus, even setting aside Plaintiff's lack of standing (*supra* Section III.A.2), the Court must dismiss his challenge to mail delays for failure to state a claim.

### d.    Returned mail without notice.

Plaintiff alleges that his mail sent to prison units instead of TDCJ's digital mail processing center is returned to sender without notice to the inmate. Compl. at ¶¶ 71-74. In addition to depriving inmates of due process, Plaintiff claims that this lack of notice somehow impedes his First Amendment rights. *Id.* Setting aside that Plaintiff does not allege that *he* was denied notice of mail sent to his unit, and thus lacks standing to challenge this policy (*see supra* at Section III.A.3.), he does not explain how the lack of notice impacted his freedom of expression so as to give rise to a viable First Amendment claim.

### 3.    Plaintiff fails to state a First Amendment access-to-courts claim.

Prisoners have a constitutionally protected right of access to the courts which requires the State to furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research. *Lewis*, 518 U.S. at 360; *Bounds v. Smith*, 430 U.S. 817, 824-28 (1977). However, prison officials have considerable discretion in how they meet these obligations. *Lewis*, 518 U.S. at 356. The right of access to the court is not unlimited, and includes only a reasonable opportunity to file non-frivolous legal claims challenging the prisoners' convictions or conditions of confinement. *Id.* at 351. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *see also Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); *Eason*, 73 F.3d at 1329 (5th Cir. 1996). Accordingly, limiting a prisoner's access to a law library and to legal materials does not violate their right of access to the courts.

Moreover, in addition to being necessary to confer standing, actual prejudice to existing or ongoing litigation is a required element of an access-to-courts claim. *See Stevens v. Adams*, 30 F.3d 1494, 1994 WL 399210, at *1 (5th Cir. July 21, 1994) ("To the extent that he was arguing that he was denied access to the courts, a plaintiff cannot state a cognizable denial-of-access-to-the-courts claim if the plaintiff's position was not prejudiced by the alleged deprivation."); *Donnelly v. Edwards*, 95 F. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to proceed in a court case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes Cty.*, 89 F. Appx. 439, 442 (5th Cir. 2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected"); *Richards v. Johnson*, 115 F. Appx. 677 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim where plaintiff "alleged no fact showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court.").

Here, as explained above, Plaintiff does not allege any actual prejudice resulting from Defendants' restrictions on his access to the courts (*supra* Section III.A.1), and for the same reason he fails to state a viable claim. *Cartner*, 89 F. Appx. At 442. But even setting that aside, the two restrictions Plaintiff challenges do not impact the type of court access protected by the First Amendment.

As pled, neither TDCJ's prohibition on paper copies of "non-interactive" documents sent by regular mail (Compl. at ¶¶ 75-93) nor TDCJ's denial of tablets with legal research capabilities (*id.* at ¶¶ 94-106) impact his ability to "prepare and transmit a necessary legal document to a court." *Brewer*, 3 F.3d at 821. With respect to paper copies of non-interactive documents, Plaintiff has not identified any such documents which must actually be submitted to the court in paper form, as opposed to merely cited. He alleges he was denied a paper copy of an A&M article which "required as an exhibit for the lawsuit [in which] he was challenging excessive heat conditions" (Compl. at ¶ 87), but does not explain in a non-conclusory fashion *why* submitting a physical copy of that article was required. *See*

*Sias*, 146 F. Appx. at 720.  With respect to access to tablets with legal research capabilities, Plaintiff admits that he still has access to the law library and can "request 3 caselaws [sic] per weekday" (Compl. at ¶ 104), which is more than sufficient to satisfy constitutional minima.  *See, e.g.*, *Jones v. Greninger*, 188 F.3d 322, 325-26 (5th Cir. 1999) (holding the limiting access to the law library to five hours per week as a result of the prisoner's job reassignment did not violate his right to access the courts).

### 4.    Plaintiff fails to state an Eighth Amendment claim.

Plaintiff alleges in his pleadings and grievances that the "social isolation and inherent disenfranchisement" of depriving inmates of pen pals and social media access violates the Eighth Amendment.  *Id.* at ¶¶ 29, 46-47, 107.  This claim is frivolous.  To state a violation of the Eighth Amendment, a plaintiff must satisfy two elements.  First, he must allege the existence of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need."  *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).  Second, he must allege that the responsible prison officials acted with deliberate indifference to his conditions of confinement."  *Id.*  Deliberate indifference is "an extremely high standard to meet," and requires a showing that the defendants were actually aware of—and knowingly disregarded—a serious risk of harm imposed by the conditions of confinement.  *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).  Plaintiff fails to allege any conditions which deprive him of the minimal measure of life's necessities, much less that Defendants were deliberately indifferent to those conditions.  Absent such allegations, his Eighth Amendment claim must fail.

### 5.    Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.  *Mathews v.*

*Eldridge*, 424 U.S. 319, 332-33 (1976).  Plaintiff fails to meet this burden with respect to either of his procedural due process claims.

### a.    Returned mail without notice.

Plaintiff alleges that personal mail sent to an inmate directly at his prison unit instead of to TDCJ's digital mail processing center is returned to sender without notice to the inmate.  Compl. at ¶¶ 71-74.  As mentioned above, any claim premised on this allegation fails for lack of standing because Plaintiff does not allege that *he* was denied notice of returned mail sent to him at his unit.  *Supra* Section III.A.3.  But even setting that aside, Plaintiff fails to establish that other inmates have been deprived of a property interest giving rise to due process protections.  Plaintiff does not allege that inmates' mail is being confiscated or destroyed; rather, he alleges that their mail is being returned to sender *when it is sent to the wrong address.*  Plaintiff does not deny that mail sent to TDCJ's digital mail processing center is scanned and sent to inmates.  Nor does Plaintiff deny that mail sent to an inmate at his unit and returned to sender can be resent to TDCJ's digital mail processing center.  Thus, if the inmate does not receive the mail, the only person at fault is the sender for using the wrong address, not TDCJ.[5]  And because TDCJ is not depriving inmates of any property, it need not implement any procedural protections.

### b.    Revocation of tablet privileges.

Plaintiff alleges that, after providing inmates with tablet computers in March 2023, TDCJ has revoked tablet privileges "arbitrar[ily]" and "without adequate due process."  Compl. at ¶¶ 94-106.  He claims that his tablet was deactivated on May 1, 2024 due to a disciplinary investigation and had not been reactivated as of the date of filing his live pleading.  *Id.*  These allegations cannot give rise to a

---

[5] TDCJ's requirement that all mail be sent to its digital mail processing center—and instructions for properly doing so—are readily available online, negating any argument that those wishing to mail letters to inmates would be unable to figure out how to do so.  *See* https://www.tdcj.texas.gov/documents/policy/BP0391.pdf (last visited 9/2/2024) at 6-8.

procedural process claim for two reasons.

First, courts around the country have unanimously held that inmates do not have a property or liberty interest in possessing state-issued tablets. *See, e.g., Bourque v. Dir., TDCJ-CID*, No. 6:23-cv-294, 2023 WL 6985722, at *2 (E.D. Tex. Aug. 28, 2023), *rec. adopted*, 2023 WL 6985647 (E.D. Tex. Oct. 23, 2023) (tablet restriction did not impute liberty interest); *Cunningham v. Barragas*, No. 1:24-cv-41, 2024 WL 3014094, at *3 (E.D. Cal. June 12, 2024) ("Plaintiff does not have a protected property interest in possessing a tablet and accessories while incarcerated."); *Atencio v. Allison*, No. 1:21-cv-00191, 2021 WL 2982917, at *4 (E.D. Cal. July 15, 2021) ("Plaintiff cannot allege a fundamental right in possession of a particular type of electronic device"); *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 129 (N.D.N.Y. 2023) ("[I]nmates do not have a protected liberty interest in tablet use."); *Lewis v. Zmuda*, No. 23-3236, 2024 WL 359332, at *3 (D. Kan. Jan. 31, 2024) ("Because the use of a tablet is not a protected liberty interest, Plaintiff's claim that he was entitled to due process before his tablet privileges were suspended is subject to dismissal."); *Ferri v. N.M. Dep't of Corr.*, 2020 WL 1935167, at *3 (D.N.M. Apr. 22, 2020) ("[P]olicies limiting the retention . . . electronic tablets . . . did not impose an atypical and significant hardship on inmates.").

Second, even assuming *arguendo* that Plaintiff has a liberty or property interest in possessing his tablet, he is not entitled to any additional due process with respect to the deactivation thereof. Procedural due process requirements for deprivations caused by state officials' authorized conduct are different from those caused by officials' unauthorized conduct. When a deprivation is authorized by an official policy, an inmate must be afforded some combination of notice and an opportunity to be heard. *See Zinermon v. Burch,* 494 U.S. 113, 127-28 (1990); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007). However, when officials engage in random and unauthorized conduct depriving an inmate of property, the deprivation is not foreseeable, and the State can satisfy due-process requirements by making available a meaningful post-deprivation tort remedy. *Zinermon*, 494

16

U.S. at 128-29; *see Parratt*, 451 U.S. at 541; *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996). Texas provides a post-deprivation remedy for property loss. *See* TEX. GOV'T CODE §§ 501.007.

Here, Plaintiff alleges that "there are no posted polic[ies] or procedures governing when or how [tablet] privilege[s] may be suspended or revoked," and that such suspensions and revocations are "being done ad hoc and arbitrarily." Compl. at ¶¶ 96, 105. Taking this allegation as true, TDCJ's revocation of Plaintiff's tablet privileges must be considered an unauthorized deprivation, and thus the availability of a post-deprivation remedy under Texas law is sufficient to satisfy the Due Process Clause. *Zinermon*, 494 U.S. at 128-29; *Colone v. Woods*, No. 1:16-cv-113, 2017 WL11779191, at *2 (E.D. Tex. July 25, 2017), *rec. adopted*, 2017 WL 11779425 (E.D. Tex. Sep. 20, 2017). Moreover, even if the Court were to construe the revocation of Plaintiff's tablet privileged as authorized, Plaintiff received adequate process because he received notice of the deprivation in the form of an I-60 response (*see* Compl. at ¶ 98), and had the opportunity to be heard through TDCJ's grievance procedure. *See, e.g.,* *Matez v. Foley*, No. 2:17-cv-134-Z, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) ("Post-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy these [due process] requirements with respect to the confiscation of property pursuant to prison regulations."). The fact that Plaintiff may be dissatisfied with the outcome of his grievances does not negate their sufficiency for due process purposes. *See Geiger v. Jowers*, 404 F.3d 371, 372-75 (5th Cir. 2005).

### 6.    Plaintiff fails to state a Fourteenth Amendment equal protection claim.

To state an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017). If a suspect class (such as race or religion) is implicated, the courts apply "strict scrutiny." *Id.* at 353-54. If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id. at 354*.

Furthermore, a plaintiff must allege "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (quotation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007). "Discriminatory purpose . . . implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992)).

Here, Plaintiff claims that TDCJ violates the Equal Protection Clause by (1) prohibiting sex offenders from soliciting pen pals through websites and (2) arbitrarily revoking tablet privileges. Compl. at ¶¶ 29, 111. This claim is meritless.

With respect to the prohibition on sex offenders soliciting pen pals through websites, the Fifth Circuit has made clear that sex offenders are not a protected class, and thus that a prison regulation allegedly impinging on a sex offender's constitutional rights is only subject to a rational basis review. *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998). And, as described above, TDCJ's pen pal policy meets this standard because the prohibition is intended to prevent fraud and reduce sex offenders' access to potential victims. *Supra* Section III.C.1.a. Moreover, Plaintiff alleges no facts indicating that the policy was enacted for discriminatory purpose.

With respect to the revocation of tablets, Plaintiff does not identify any group who which is being treated differently from other groups, much less that the deprivation of tablets from that group was done with discriminatory intent. To the extent Plaintiff asserts a "class-of-one" equal protection claim premised on the deprivation of his tablet, he fails to meet an essential element of that claim; namely, that he was intentionally treated differently from other similarly situated inmates. *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). While Plaintiff alleges that some other inmates with disciplinary convictions have not had their tablet privileges revoked, he does not allege that inmates with his *specific* disciplinary conviction (trafficking and trading contraband) are able to retain access to

their tablets. *See* Compl. at ¶¶ 101-102. Absent such allegations, Plaintiff fails to show that he is being treated differently from similarly situated inmates so as to invoke equal protection concerns.

## IV. CONCLUSION

Defendants request that all of Plaintiffs' claims against them be dismissed with prejudice for want of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

KEN PAXTON
Attorney General of Teas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Division Chief
Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Attorney-In-Charge
Texas State Bar No. 24077883
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, certify that a true copy of the foregoing has been served on Plaintiff to via certified mail, return receipt requested, on September 3, 2024 to the following address:

Scott Zirus TDCJ #1640002
TDCJ-CID Robertson Unit
12071 FM 3522
Abilene, TX, 79601

/s/ Michael J. Calb
**MICHAEL J. CALB**
Assistant Attorney General